UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KEITH LAWSON and MARIANNE
LAWSON,

                    Plaintiffs,

    -against-                                      3:14-CV-0195 (LEK/DEP)

BROOME COUNTY, *et al.*,

                      Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

       Plaintiffs Keith and Marianne Lawson ("Plaintiffs") commenced this action on February 25, 2014 against Defendants Broome County (the "County"), Broome County Department of Social Services (the "Department"), Sara Friedel ("Friedel"),[1] and Christina Martinkovic ("Martinkovic") (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 alleging that Defendants violated their due process rights. See Dkt. No. 1 ("Complaint"). Defendants filed an Answer on May 22, 2014. Dkt. No. 11 ("Answer"). Presently before the Court is a Motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the County on June 3, 2015. Dkt. Nos. 20 ("Motion"); 20-1 ("Memorandum"). Plaintiffs filed a Response in opposition along with a Cross-Motion to amend the Complaint. Dkt. Nos. 23 ("Cross-Motion"); 23-2 ("Amended Complaint"); 23-3 ("Cross-Motion Memorandum"). The County then filed a Reply. Dkt. No. 25 ("Reply"). For the following reasons, the County's Motion is granted, Plaintiffs' Cross-Motion is denied, and the case is

---

[1] On August 8, 2014, the parties agreed to dismiss Friedel from this action. See Minute Entry dated August, 8, 2014.

dismissed.

## II. BACKGROUND[2]

### A. Statutory Framework

The New York legislature has declared that "[a]bused and maltreated children in this state are in urgent need of an effective child protective service to protect them from suffering further injury and impairment," and that "[i]t is the purpose of this title to encourage more complete reporting of suspected child abuse and maltreatment and to establish in each county of the state a child protective service capable of investigating such reports swiftly and competently and capable of providing protection for the child or children from further abuse or maltreatment." N.Y. SOC. SERV. LAW § 411. To achieve this, the New York State Office of Children and Family Services ("OCFS") supervises the provision of child protective services by local social services districts. Each local district is required to establish such child protective services to investigate allegations of child abuse or maltreatment and to provide services to children in need of protective services.

Plaintiffs' claims arise out of an investigation, or lack of investigation, pursuant to Article 6 of New York Social Services Law, which governs the recording and investigation of reports of suspected maltreatment of children, as well as the administrative process by which substantiated reports may be reviewed. See generally N.Y. SOC. SERV. LAW §§ 411-428. Section 422 of the Social Services Law establishes the State Central Register ("SCR"), which is a database of the

---

[2] Because this matter is before the Court on a motion to dismiss, the allegations of the Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

2

names of all known subjects of indicated reports of child abuse and maltreatment in New York State.  Id. § 422(1).  When an allegation of child abuse is received by the SCR and "could reasonably constitute a report of child abuse or maltreatment," such allegation must immediately be transmitted from OCFS to the appropriate local child protective service for investigation.  Id. § 422(2).  The local child protective service is required to initiate an investigation within twenty-four hours of receiving a report and must determine within sixty days whether a report is "indicated" or "unfounded."  Id. § 424(6) and (7).

Section 422(5)(a) provides that unless an investigation reveals "some credible evidence of the alleged abuse or maltreatment, all information identifying the subjects of the report and other persons named in the report shall be legally sealed forthwith by the central register and any local child protective services or the state agency which investigated the report."  Id. § 422(5) An unfounded report may only be unsealed and made available for limited administrative and law enforcement purposes, and will not be publicly available or disclosed to potential employers.  Id.

**B. Original Complaint**

Plaintiffs are residents of Texas and were formerly the foster parents of an infant child.  Compl. ¶ 6.[3]  Plaintiffs began caring for the child in 2009 and cared for the child for two and a half years without any incidents or complaints.  Id. ¶¶ 10, 12.  During that time, Plaintiffs were responsible for the care and upbringing of the child, including bringing her to doctor's appointments and attending meetings with her counselors, social workers, and caseworkers.  Id. ¶ 11. Under the terms of an agreement between Plaintiffs and the Department, the child was allowed to have

---

[3] Plaintiffs were residents of Broome County at the time of the incidents alleged in the Complaint.  Mem. at 1.

supervised visitation with her birth mother. Id. ¶ 16.

Defendants Martinkovic and Friedal were employed by the Department. Id. ¶ 9. Plaintiff Keith Lawson contends that the birth mother's visits with the infant child were supposed to be supervised, and that he raised several concerns to Friedel and Martinkovic regarding their supervision of the visits and the actions of the birth mother. Id. ¶¶ 13; 15. Specifically, Keith Lawson was concerned that the visits were not supervised, as they were supposed to be, but rather only "monitored." Id. ¶ 16. Plaintiffs provided several documents to the caseworkers that showed the birth mother was not benefitting from the services "she chose to complete." Id. ¶ 17. Plaintiffs contend that the caseworkers disregarded the documents and instead informed Keith Lawson that he was "interfering with the agency's goals." Id. ¶ 18. Plaintiffs also provided the caseworkers with information that the birth mother was asked to leave the home of her maternal grandparents, where she had been residing, because she possessed drug paraphernalia and for "sneaking strange men into the basement of the home while the grandparents were sleeping." Id. ¶ 20.

Plaintiffs felt that their concerns regarding the birth mother's conduct were ignored by the caseworkers and raised their concerns with the Department that the child's interests were being ignored. Id. ¶¶ 21, 22. At some point in August 2011, meetings were scheduled for Plaintiffs to meet with Martinkovic, but "proper notice was not given." Id. ¶ 23. The Department "became concerned about these meetings and indicated the same to Plaintiffs' attorneys." Id. ¶ 24. Plaintiffs raised concerns that the actions of the Department and its employees were putting the child at further risk of harm and abuse by the birth mother, and that Martinkovic should be removed from the case. Id. ¶ 26. Thereafter, the Department issued a ten-day notice to terminate Plaintiffs' custody of the child, which was contrary to an agreement reached between Plaintiffs' attorneys and

4

the Department. Id. ¶ 25.

On August 17, 2011, the birth mother alleged that Keith Lawson had sexually abused the child. Id. ¶ 13. It appears that the allegation was made after an unsupervised visit between the child and the birth mother. Id. The child was immediately removed from Plaintiffs' home. Id. ¶ 14. Plaintiffs contend that Defendants acted inappropriately in removing the child from their home. Id. ¶ 28. They contend that the Department acted in retaliation for Plaintiffs' complaints about the Department, the caseworkers, and the birth mother. Id. Plaintiffs contend that the child was never in any danger while in their custody and there was no proof that they abused the child in any way. Id.

On September 12, 2011, the Department informed Plaintiffs that they had been registered with the SCR due to the alleged child abuse report from August 17, 2011. Id. ¶ 29. On November 8, 2011, it was determined that there was no credible evidence of abuse. Id. ¶ 30. Although it was found that there was no evidence to support the abuse charge, Defendants took no action to remove Plaintiffs' registration with the SCR. Id. ¶ 31.

Plaintiffs allege that the laws, regulations, and policies providing for the removal of the child and indicating Plaintiffs as alleged sexual abusers without providing them notice and an opportunity to be heard constitute a violation of Plaintiffs' substantive due process rights. Id. ¶ 33. Plaintiffs contend that by terminating their role as foster parents, they were deprived of a protected property interest. Id. ¶ 34. Plaintiffs further allege that by characterizing Plaintiffs as sexual abusers and defaming them and damaging their reputations, Defendants deprived them of a protected liberty

interest. Id. ¶ 35.[4]

### B. Proposed Amended Complaint

In their Cross-Motion, Plaintiffs request leave to amend the original Complaint. The proposed Amended Complaint reincorporates the allegations contained in the original Complaint and adds the following allegations. Am. Compl. Martinkovic, while acting in her official capacity, determined that the child's birth mother was not fit to parent the child. Id. ¶ 38. In early 2011, Martinkovic directed an attorney from Broome County to commence a termination proceeding against the birth mother and informed Plaintiffs and the birth mother that a termination proceeding was going to be commenced. Id. ¶¶ 39, 41. The attorney never commenced the proceeding. Id. ¶ 40. Plaintiffs relied on the Martinkovic's representation that a termination proceeding would be brought so that they could then adopt the child. Id. ¶ 42. Plaintiffs maintain that they continued to provide Martinkovic with information that the birth mother was having inappropriate relations with older men and that she was continuing to use illicit drugs, and that Martinkovic was aware that Plaintiffs were not satisfied with how Martinkovic was handling the birth mother's visitation with the child. Id. ¶¶ 43-44.

Plaintiffs allege that around July 2011, Martinkovic suddenly and without justification began to turn against the Plaintiffs and alleged without proper foundation that the Plaintiffs were not cooperating with the birth mother's visitation rights with the child. Id. ¶ 46. Shortly thereafter, Plaintiffs received a letter dated August 16, 2011 from another agency, but that was sent at the direction of Martinkovic, to cite Plaintiffs for violating the visitation requirements. Id. ¶ 47. On

---

[4] Although the parties allude to "Plaintiffs' state law claims," Plaintiffs fail to plead any state law causes of action in the Complaint or in the proposed Amended Complaint. Therefore, the Court does not consider the County's arguments regarding Plaintiffs' state law claims.

August 17, 2011, the birth mother accused Plaintiff Keith Lawson of having inappropriate contact with the child, after which Martinkovic ordered that the child immediately be removed from Plaintiffs' residence, despite a lack of credible evidence that the child had in fact been abused. Id. ¶¶ 48-49.

Plaintiffs allege that Defendants did not conduct a proper investigation into the alleged abuse before removing the child from their home. Id. ¶ 50. Plaintiffs allege that the child would not have been removed from Plaintiffs' home based on the alleged visitation violations alone. Id. ¶ 51. Plaintiffs assert that their due process rights were violated because they were not afforded the opportunity to contest the alleged visitation violation before the child was removed from their home. Id. ¶¶ 52-53. They allege that Martinkovic was acting "pursuant to a custom and policy of Defendant Broome County to favor the mother even when it was apparent she was unfit to be a parent to the child and contrary to the law that required the Defendants to begin the termination proceeding which the Plaintiffs relied on that the Defendants would fulfill their legal obligation." Id. ¶ 54.

### III. DISCUSSION

As a preliminary matter, the Court must call attention to the fact that both parties' briefs contain legal conclusions that are largely unsupported by any legal authority. In addition to the procedural errors identified below, the Court finds that the submissions in this case are unprofessional, poorly researched, and fail to identify the applicable legal standards.

**A. Plaintiffs' Request to Treat Motion as Motion for Summary Judgment**

Plaintiffs argue that the County's Motion to dismiss should be treated as a motion for summary judgment because the Notice of Motion styles the Motion as a motion for summary

judgment. Dkt. No. 23-1 ("Rzepka Affidavit") ¶ 2; see also Mot. The County counters that the Motion contains a clerical error referring to Rule 56, but that the Motion is "clearly a Rule 12(b)(6) motion." Reply at 2. Additionally, Plaintiffs argue that the Motion should be stricken in its entirety because the County failed to file any supporting affidavits to support the factual allegations set forth in their Statement of Material Facts.[5] Rzepka Aff. ¶¶ 2, 3. Additionally, both parties include factual allegations in their briefing that are extrinsic to the Complaint and that are not properly considered on a motion to dismiss.

As a preliminary matter, the Court notes that the County filed its Motion after filing its Answer. See Answer; Mot. Rule 12(b)(6) states that the defense of failure to state a claim "shall be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). However, Rule 12(h)(2) states that "[a] defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted . . . or by motion for judgment on the pleadings, or at the trial on the merits." FED. R. CIV. P. 12(h)(2). Accordingly, the defense of failure to state a claim is not waivable. Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001); see also 5A Wright & Miller, Federal Practice and Procedure § 1361 (3d ed. 2004) ("[U]nder Rule 12(h) [the defense] of failure to state a claim upon which relief can be granted, Rule 12(b)(6), [is] preserved from the waiver mechanism in Rule 12(h)."). A motion to dismiss for failure to state a claim that is styled as arising under Rule 12(b) but is filed after a responsive pleading has been filed

---

[5] A supporting affidavit is not required for a motion made pursuant to Rule 12(b)(6), see N.D.N.Y. L.R. 7.1(a)(2)(A). However, the Court notes that even if the County's Motion were construed as a motion for summary judgment, the submitted Statement of Material Facts does not comply with Local Rule 7.1(a)(3), which requires "in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established." N.D.N.Y. L.R. 7.1(a)(3). The County fails to include any citations to the record in support of its Statement of Material Facts. Mot.

8

should instead be construed as a motion for judgment on the pleadings under Rule 12(c). Patel, 259 F.3d at 126. "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Id.

When considering a motion to dismiss, the Court may consider documents attached as exhibits to the complaint or incorporated by reference, documents that are "integral" to a plaintiff's claims, even if not incorporated by reference, and matters of which judicial notice may be taken. Islip U-Slip LLC v. Gander Mountain Co., 2 F. Supp. 3d 296, 302 (N.D.N.Y. 2014). To incorporate by reference, "the Complaint must make a clear, definite and substantial reference to the document," Thomas v. Westchester Cty. Health Care Corp., 232 F. Supp. 2d 273, 275-76 (S.D.N.Y. 2002). However, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991); see also Chambers v. Time Warner, 282 F.3d 147, 153 (2d Cir. 2002) (stating that a court may also consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit"). "A plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Chambers, 282 F.3d at 153.

When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court has two options: the court may exclude the additional material and decide the motion based on the complaint alone, or it may convert the motion to one for summary judgment under Rule 56 and

9

afford all parties the opportunity to present supporting material. Islip U-Slip LLC, 2 F. Supp. 3d at 302. If the district court chooses to exclude the material, conversion is not required. Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006).

In the present case, the Court notes that the County's Motion was intended as a motion to dismiss, and will not convert the Motion to a motion for summary judgment on the basis of the County's clerical error alone. Reply at 2. Both parties make substantial reference to the findings of the County's investigation into the allegations of sexual abuse against Keith Lawson and Plaintiffs' alleged interference with the permanency plan for the child. However, neither party has attached the findings of the investigation for the Court's review. Therefore, the Court will review the County's Motion as a motion for judgment on the pleadings pursuant to Rule 12(c) and will not consider material extrinsic to the Complaint. Accordingly, the Court will accept the statements in the Complaint as true and draw all inferences in Plaintiffs' favor.

### B. Motion to Amend

Generally, a party may amend its pleading once as of right. FED. R. CIV. P. 15(a)(1). Once an as-of-right amendment becomes unavailable, a party may amend only with the consent of the opposing party or with leave of the court. FED. R. CIV. P. 15(a)(2). Leave to amend a pleading should be "freely given when justice so requires." Id. District courts are vested with broad discretion to grant a party leave to amend, and should deny such a request only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. Foman v. Davis, 371 U.S. 178, 182 (1962); SCS Commc'n, Inc. v. Herrick Co., 360 F.3d 329, 345 (2d Cir. 2004). "The party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly

prejudicial." Media Alliance v. Mirch, No. 09-CV-659, 2010 WL 2557450, at *2 (N.D.N.Y. June 24, 2010) (Kahn, J.) (quoting New York v. Panex Indus., No. 94-CV-0400, 1997 WL 128369, at *2 (W.D.N.Y. Mar. 14, 1997)).

The County argues that Plaintiffs' Cross-Motion to amend the Complaint should be denied because the proposed Amended Complaint "do[es] not present a new cause of action but simply supplements the allegations of the original complaint" and because "Plaintiffs have failed to point to a constitutional, statutory or contractual provision that would entitle them to custody of the subject child," and therefore, amendment would be futile. Reply at 3-4. Before the Court addresses these assertions, the Court notes that the other Foman factors militate in favor of granting leave to amend. Plaintiffs filed the proposed Amended Complaint in August of 2015, roughly two months after the County filed its Motion to dismiss. See Dkt. No. 23. The new allegations contained in the proposed Amended Complaint appear to be based on the deposition testimony of Martinkovic, which became available to Plaintiffs' just the week before they filed the proposed Amended Complaint. Therefore, it does not appear that Plaintiffs showed undue delay in filing the proposed Amended Complaint. Additionally, the County does not articulate any evidence of bad faith or undue prejudice that would result from granting Plaintiffs leave to amend, and this is Plaintiffs' first request to amend the Complaint. Futility is an appropriate basis for denying leave to amend, and "should be contemplated within the standards necessary to withstand a motion to dismiss." Vail v. Fischer, No. 12-cv-1718, 2013 WL 5406637, at *3 (N.D.N.Y. Sept. 25, 2013). Accordingly, the Court will analyze the proposed Amended Complaint pursuant to Rule 12(b)(6).

**C. Rule 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. 678 (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See Iqbal, 556 U.S. at 678-79.

*1. Claims Against Martinkovic and the Department*

The County argues that all claims against Martinkovic should be dismissed because all of the allegations against Martinkovic pertain to actions that she undertook in her official capacity. Mem. at 6. "A claim against a government officer in [his or her] official capacity is, and should be treated as, a claim against the entity that employs the officer." Mathie v. Fries, 121 F.3d 808, 818 (2d Cir. 1997); see also Booker v. Bd. of Educ., 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002) ("The real party in interest in an official capacity suit is the governmental entity and not the named official.").

Accordingly, since Broome County is named as a Defendant in this action, the official capacity claims against Martinkovic are dismissed as redundant. Moreover, since Plaintiffs fail to make any allegations against Martinkovic in her individual capacity, Martinkovic is dismissed from this action entirely.

The County further argues that all claims against the Department should be dismissed on the ground that the Department is merely an administrative arm of Broome County, and therefore is not a distinct entity that is subject to suit. Mem. at 6. It is well established that an administrative arm of a municipality is not a distinct entity subject to suit. See Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against Warren County Sheriff's Department as redundant where Plaintiff had also asserted claims against Warren County). Since the Department "is merely an administrative arm of the County, . . . the County is the real party in interest." Id. Accordingly, all claims against the Department are dismissed.

*2. Municipal Liability*

The County argues that the Complaint fails to sufficiently allege that Defendants' conduct resulted from a municipal policy or custom, as required under Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978). Mem. at 7. While it is true that the original Complaint lacks any allegations to satisfy Monell, Plaintiffs attempt to rectify this omission in the proposed Amended Complaint.

In order to establish liability of a municipality under § 1983, a plaintiff must plead and prove that the deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell, 436 U.S. 658). "The plaintiff must first prove the existence of a municipal policy or custom

in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). A plaintiff must demonstrate that the municipality, through its own deliberate conduct, was the "moving force" behind the alleged injury. Roe v. City of Waterbury, 42 F.3d 31, 37 (2d Cir. 2008). Although a plaintiff is not required to "show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

In the proposed Amended Complaint, Plaintiffs allege that "upon information and belief, Defendant Martinkovic was acting pursuant to a custom and policy of Defendant Broome County to favor the mother even when it was apparent she was unfit to be a parent to the child and contrary to the law that required the Defendants to begin the termination proceeding which the Plaintiffs relied on that the Defendants would honor their legal obligation." Am. Compl. ¶ 54. The Court finds this allegation insufficient to establish municipal liability. Plaintiffs' allegation is specific to the incident at hand, and does not allege a county-wide policy or custom. For example, Plaintiffs do not allege that Broome County instructs its social workers to "always favor the birth mother," and Plaintiffs allege no facts to suggest that a person at the policy-making level has instructed social workers to carry out a policy or custom that favors the rights of biological parents over foster parents. As alleged, this is precisely the type of "single incident" that is insufficient to sustain municipal liability. See Ricciuti, 941 F.2d at 123; see also Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion that a municipality has such a custom or policy is

14

insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

### 3. Due Process

Plaintiffs' due process claim is not entirely clear. Plaintiffs appear to argue that they were denied due process when the child was removed from their home immediately following the reported incident of abuse without prior notice and an opportunity to be heard. Am. Compl. ¶¶ 33-35. Accordingly, the Court has construed Plaintiffs' allegations as a claim for violation of procedural due process.

The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. In order to state a claim for a violation of procedural due process, a plaintiff must demonstrate first, that he or she has been deprived of a protected liberty or property interest, and second, that the procedure used to deprive him or her of that interest was constitutionally deficient. Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989). The proposed Amended Complaint asserts that Plaintiffs had a property interest in the opportunity to be foster parents in the State of New York and to adopt children. Am. Compl. ¶ 34. Plaintiffs further allege that by "characterizing Plaintiffs as sexual abusers and perpetrators of sexual abuse," "Defendants have defamed Plaintiffs and otherwise damaged Plaintiffs' reputation, a liberty interest protected by the Fourteenth Amendment of the United States Constitution." Id. ¶ 35.

#### a. Liberty Interest

First, to the extent that Plaintiffs allege that they had a liberty interest in a continued foster-parent relationship with the particular child in their custody, that claim must fail. See Rodriguez v.

McLoughlin, 214 F.3d 328, 341-42 (2d Cir. 2000) (finding that New York's statutory scheme did not create a protected liberty interest in a continued foster-parent relationship between foster parents and foster child).

To the extent that Plaintiffs allege that their inclusion on the SCR implicates a liberty interest in their prospective role as foster parents or ability to adopt children, the Court will analyze this claim under the "stigma plus" framework. It is well settled that damage to one's reputation does not rise to the level of a constitutionally protected liberty interest. Paul v. Davis, 424 U.S. 693, 711-12 (1976); McCaul v. Ardsley Union Free Sch. Dist., 514 F. App'x 1, 3-4 (2d Cir. 2013). "Mere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairments of one's future employment." Hojnacki v. Klein-Acosta, 285 F.3d 544, 548 (7th Cir. 2002). Rather, it is only the "alteration of legal status," such as governmental deprivation of a right previously held, "which, combined with the injury resulting from the defamation, justif[ies] the invocation of procedural safeguards." Paul, 424 U.S. at 708-09. Accordingly, when a state actor casts doubt upon an individual's "good name, reputation, honor or integrity" to such an extent that it becomes "virtually impossible for the [individual] to find new employment in his chosen field," the government's conduct has implicated that individual's liberty interest to pursue his or her chosen occupation. Townsend v. Vallas, 256 F.3d 661, 670 (7th Cir. 2001). Courts characterize this type of showing as a "stigma plus" claim. Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994).

In Valmonte, the Second Circuit found that the publication of a child care worker's status as an alleged child abuser on the SCR to prospective employers implicated a liberty interest. 18 F.3d at 1001. The Second Circuit found that the plaintiff had satisfied the burden of alleging reputational

16

stigma plus alteration in her legal status by showing that her placement on the SCR amounted to "more than a loss of employment flowing from the effects of simple defamation," and "place[d] a tangible burden on her employment prospects" because all potential employers would see this information and would have to provide a written explanation as to why the plaintiff should be hired in spite of her status on the SCR. Id. The court concluded that the plaintiff had pleaded a "specific deprivation of her opportunity to seek employment caused by a statutory impediment established by the state." Id.

Courts generally agree that an individual's placement on the SCR satisfies the "stigma" element of a stigma plus claim. See, e.g., Valmonte, 18 F.3d at 1001 (finding plaintiff's placement on the SCR constituted a stigma); Worrell v. City of New York, No. 12-CV-6151, 2014 WL 1224257, at *7 (E.D.N.Y. Mar. 24, 2014) (same); Tafuto v. N.Y.S. Office for Children and Family Svcs., No. 08-CV-8433, 2012 WL 4459803, at *6 (S.D.N.Y. Sept. 25, 2012) (same); Finch v. N.Y.S. Office of Children and Family Svcs., 499 F. Supp. 2d 521, 534 (S.D.N.Y. 2007) (same). In the present case, Keith Lawson's placement on the SCR satisfies the stigma element of Plaintiffs' stigma plus claim.

The "plus" element of a stigma plus claim requires a material state-imposed burden or alteration of a plaintiff's legal status or rights. McCaul, 514 F. App'x at 4. "To qualify as a 'plus,' the state-imposed burden must be separate from 'the deleterious effects which flow directly from a sullied reputation.'" Tafuto, 2012 WL 4459803, at *5 (quoting Valmonte, 18 F.3d at 1001). Plaintiffs argue that Defendants have deprived them "of the opportunity to be foster parents in the State of New York and to adopt children, which is a property interest protected by the United States Constitution." Compl. ¶ 35. However, Plaintiffs fail to bolster this claim with additional facts to

17

show whether they have been denied the opportunity to serve as foster parents in the future, or whether they have been denied the right to adopt children altogether.

Courts in the Second Circuit require a plaintiff to plead more than just the possibility that their inclusion on the SCR will impede their rights. Worrell, 2014 WL 1224257, at *6. "[A] plaintiff must plead, at least, that they would have sought a job or to foster or adopt a child but for their inclusion on the Central Register." Id.; see also Powell v. Johnson, No. 11-CV-1471, 2012 WL 4052261, at *4-6 (N.D.N.Y. Jan. 9, 2012) (finding that the plaintiff, about whom a report was made to the SCR, which report was investigated and found to be "unfounded," was "unlikely" to be able to assert a protectable liberty interest where plaintiff included no allegations in her complaint that her child daycare license or registration were affected by the investigation); see also Tafuto, 2012 WL 4459803, at *6 (finding that plaintiff's allegation that county's failure to notify parents of children at her daycare that indicated report naming her to SCR was later determined to be unsubstantiated and that the indicated report may be disclosed to parents looking for childcare was nothing more than a defamation claim).

In the present case, Plaintiffs fail to allege how their inclusion on the SCR has impacted their right to be foster parents in the future or to adopt children moving forward. While it is true that the foster child was removed from Plaintiffs' custody following the allegation of sexual abuse, the proposed Amended Complaint does not contain any other facts to support an inference that it was Keith Lawson's placement on the SCR that placed a tangible burden on Plaintiffs' right to foster children or adopt children in the future. Moreover, the proposed Amended Complaint suggests that the child was removed from Plaintiffs' home based on Plaintiffs' failure to comply with a court-issued custody arrangement, rather than because of the allegations of sexual abuse. Am. Compl.

¶¶ 18, 26, 28, 46, 47. Accordingly, the Court finds that Plaintiffs have failed to state a "stigma plus" claim and have therefore failed to show that they had a protected liberty interest.

### b. Process Provided

Merely establishing a "stigma plus" is not enough to prevail on a due process claim. Tafuto, 2012 WL 4459803, at *5. In addition to alleging a "stigma plus," the plaintiff must also demonstrate that his or her liberty was deprived without due process of law. Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006). "[T]he availability of adequate process defeats a stigma-plus claim." Id. The Court finds that the proposed Amended Complaint fails to inform the Court of exactly what process was afforded or denied Plaintiffs preceding or following the child's removal. For example, Plaintiffs allege that "[b]eginning in or about August, 2011 meetings were being scheduled for the Plaintiffs to meet with Defendant Martinkovic but proper notice was not given." Am. Compl. ¶ 22. "The Department of Social Services became concerned about these meetings and indicated the same to Plaintiffs' attorneys" and thereafter, " a ten day notice to terminate was issued to the Plaintiffs which was contrary to an agreement reached" between Plaintiffs' attorneys and the Department. Id. ¶¶ 23, 24. From these vague allegations, it appears that Plaintiffs were given notice and an opportunity to be heard prior to the child's removal from their home. Moreover, the Complaint is silent regarding how Plaintiffs' placement on the SCR has impacted their liberty interests in the right to adopt or foster children moving forward, and therefore the Court is unable to assess whether Plaintiffs were afforded adequate process.

The Court finds that the proposed Amended Complaint fails to state a claim upon which relief may be granted, and therefore granting Plaintiffs' Cross-Motion for leave to amend would be futile. Accordingly, the County's Motion, which has been analyzed as a motion on the pleadings

19

pursuant to Rule 12(c), is granted and the Complaint is dismissed in its entirety.[6]

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the County's Motion (Dkt No. 20) for judgment on the pleadings is

**GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Cross-Motion (Dkt. No. 23) for leave to amend is **DENIED** as futile; and it is further

**ORDERED**, that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: February 03, 2016
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[6] As previously discussed, the proposed Amended Complaint reincorporates the first thirty-six paragraphs of the original Complaint. Having found the allegations in the proposed Amended Complaint insufficient to withstand a motion to dismiss, the Court similarly finds that the original Complaint fails to state a claim upon which relief can be granted.